| | |
|---|---|
| STATE OF MAINE<br>YORK, ss | SUPERIOR COURT<br>CIVIL ACTION<br>DOCKET NO.: CV-16-61 |

| | | |
|---|---|---|
| BERTRAND GIRARD, of Hollis,<br>York County, Maine, | ) | |
| PLAINTIFF, | ) | |
| v. | ) | COMPLAINT |
| STEPHEN DODD of Lakeland, Polk County,<br>Florida, | ) | (WITH DEMAND FOR JURY TRIAL) |
| In his Individual Capacity, | ) | |
| ROGER BEAUPRE, of Biddeford, York<br>County, Maine, | ) | |
| In his Official Capacity as Chief of Police<br>For the Biddeford Police Department and in<br>His Individual Capacity, | ) | |
| and, | ) | |
| CITY OF BIDDEFORD,<br>a municipality in the State of Maine, | ) | |
| DEFENDANTS. | ) | |

NOW COMES Plaintiff and hereby complains against Defendants as follows:

PRELIMINARY STATEMENT

1. Bertrand Girard was sexually assaulted by Biddeford Police Officer Stephen Dodd between 1977 and 1982. Steven Dodd used his power and authority as a law enforcement officer to gain access to Bertrand Girard and to obtain Bertrand Girard's trust to sexually abuse Bertrand Girard and to ensure Bertrand Girard's silence about Stephen Dodd's abuse. Chief

Roger Beaupre was Chief of the Biddeford Police Department before, during, and after Bertrand Girard was sexually abused by Stephen Dodd. Chief Roger Beaupre was given information prior to Stephen Dodd's abuse such that he was aware of and/or should have been aware that Stephen Dodd and at least one other Biddeford police officer had been and were sexually abusing young boys, including Bertrand Girard. As Chief, Roger Beaupre ignored this information and failed to prevent the abuse. Chief Roger Beaupre's failure to act meant that Stephen Dodd was able to sexually assault Bertrand Girard. Bertrand Girard brings this action against Stephen Dodd, Chief Roger Beaupre and the City of Biddeford pursuant to 42 U.S.C. § 1983.

## PARTIES

2. Plaintiff Bertrand Girard ("Girard") is an individual residing in Hollis, Maine.

3. At all times relevant to this Complaint, Girard was a minor residing in Biddeford, Maine.

4. Defendant Stephen Dodd ("Officer Dodd") is an individual residing, on information and belief, in Lakeland, Florida.

5. At all times relevant to this Complaint, Officer Dodd was a police officer with the Biddeford Police Department ("BPD") and was acting under color of state law as a BPD police officer employed by BPD and the City of Biddeford, Maine.

6. Defendant Roger Beaupre ("Chief Beaupre") is the Chief of Police for BPD and was the Chief of Police for BPD at all times relevant to this Complaint and was acting under color of state law as the Chief of BPD.

7. Defendant Chief Beaupre is and was the final policy maker for BPD.

8. Defendant City of Biddeford is a municipality in the State of Maine.

9. Defendants Chief Beaupre, in his Official Capacity as Chief of BPD, and City of Biddeford are collectively referred to as "Municipal Defendants."

## STATEMENT OF FACTS

10. Between 1977 and 1978 when Girard was 13 to 14 years old and in middle school, he was first sexually abused by Officer Dodd.

11. Girard first met Officer Dodd at Girard's home during 1977, when Officer Dodd brought Girard's brother home.

12. During the visit, Officer Dodd learned that Girard's mother was sick with epilepsy and that his father, a truck driver and alcoholic, was away from home quite a bit.

13. Officer Dodd befriended Girard and would routinely stop by Girard's home to check up on Girard and his family.

14. Officer Dodd would arrive at Girard's home in his police vehicle.

15. Officer Dodd learned that Girard's mother and father divorced.

16. Officer Dodd offered to buy clothes for Girard, and did buy clothes for Girard.

17. Officer Dodd enticed Girard with his new Chevrolet Camaro and would pick Girard up and take him for rides and give Girard cases of beer.

18. Officer Dodd would allow Girard and Girard's younger brother to drive the Camaro, both of whom were underage.

19. Officer Dodd invited Girard to live with him on Taylor St. in Biddeford, Maine.

20. Girard did move in with Officer Dodd at his Taylor St. home.

21. Girard looked up to Officer Dodd and respected him as a law enforcement officer in the community.

22. Officer Dodd stocked the household refrigerator with alcohol and would drink with Girard.

23. One night, after Girard had passed out from drinking too much, Girard woke up and found himself naked in Officer Dodd's bed, and Officer Dodd was on top of Girard, performing oral sex on Girard.

24. Between 1977 and 1982, Officer Dodd supplied Girard with clothing, food, alcohol and drugs that he confiscated while on duty at BPD, in order to entice Girard to perform sexual acts on Officer Dodd.

25. On some occasions, the sexual assaults occurred while Officer Dodd was in full BPD uniform.

26. Between 1977 and 1982, Officer Dodd sexually assaulted Girard by forcibly inserting his penis into Girard's anus.

27. Between 1977 and 1982, Officer Dodd forced Girard to perform oral sex on him.

28. Between 1977 and 1982, Officer Dodd forced Girard to manually stimulate his penis to the point of ejaculation.

29. Between 1977 and 1982, Officer Dodd masturbated in front of Girard.

30. Between 1977 and 1982, Officer Dodd would come home during his shift while Girard was asleep and perform oral sex on Girard while in full uniform.

31. On more than one occasion, Girard awoke while Officer Dodd was performing oral sex in full uniform and Officer Dodd would point to his mouth and tell Girard to keep quiet and point to his police radio.

32. Girard was arrested for an alleged crime in Old Orchard Beach and Officer Dodd showed up at the police station, authorized Girard's release from the jail, tore up the summons and told Girard he didn't have to appear in court.

33. Over time, when Girard got in trouble with the law, Officer Dodd would tell Girard to hide at his home.

34. Officer Dodd used his power and authority as a BPD officer to earn Girard's trust, sexually assault Girard and prevent Girard from disclosing the sexual assaults.

35. When Girard would try to keep his distance from Officer Dodd, he would lure Girard back with alcohol, drugs, shelter and money.

36. Upon information and belief, prior to the time that Officer Dodd sexually assaulted Girard, information had been conveyed to Chief Beaupre that Officer Dodd and at least one other BPD officer had committed sexual acts against minors in Biddeford.

37. Upon information and belief, Officer Dodd had been engaged in so many sexual assaults against minors in Biddeford that Chief Beaupre knew and/or should have known that Officer Dodd was a pedophile, was dangerous to young men and should not be a BPD police officer.

38. Chief Beaupre knew and/or should have known that BPD officers were sexually assaulting minors based on the information that he was given, including but not limited to Officer Dodd's sexual abuse of minors.

39. Despite receiving this information, Chief Beaupre took no steps to protect Girard or other minors in Biddeford from the sexual assaults.

## CLAIMS FOR RELIEF

### Count I
### 42 U.S.C. § 1983
### (Officer Dodd in his Individual Capacity)

40. Girard repeats and realleges Paragraphs 1 through 39 as if set forth fully herein.

41. At all times relevant to this Complaint, Girard had a Constitutional right of liberty of bodily integrity, including but not limited to a right to be free from sexual assault by BPD police officers.

42. Officer Dodd was acting under color of state law when he sexually assaulted Girard on numerous occasions.

43. Officer Dodd's sexual assaults were a direct deprivation of Girard's Constitutional right to liberty of bodily integrity and to be free from sexual assault.

44. As a result of Officer Dodd's actions, Girard suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

### COUNT II
### 42 U.S.C. § 1983
### (Chief Beaupre in his Individual Capacity)

45. Girard repeats and realleges Paragraphs 1 through 44 as if set forth fully herein.

46. At all times relevant to this Complaint, Girard had a Constitutional right of liberty to bodily integrity, including but not limited to a freedom from sexual assault by BPD police officers.

47. Officer Dodd was a subordinate to Chief Beaupre at all times relevant to this Complaint.

48. Officer Dodd violated Girard's Constitutional rights, as previously set forth herein.

49. Chief Beaupre's failure to investigate complaints against Officer Dodd and/or supervise Officer Dodd's misconduct constituted supervisory encouragement, condonation or acquiescence, amounting to deliberate indifference.

50. Chief Beaupre's actions and/or inactions described herein were affirmatively linked to Officer Dodd's violation of Girard's Constitutional rights.

51. Girard did not know and had no reason to know that the deliberately indifferent and/or omissions of Chief Beaupre were the cause of his injuries and the violations of his Constitutional rights.

52. As a result of Chief Beaupre's actions and inactions Girard suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

### COUNT III
### 42 U.S.C. § 1983
### (Municipal Defendants)

53. Girard repeats and realleges Paragraphs 1 through 54 as if set forth fully herein.

54. At all times relevant to this Complaint, Girard had a Constitutional right of liberty to bodily integrity, including but not limited to a freedom from sexual assault by BPD police officers.

55. With deliberate indifference to the right of minor citizens to be free from invasions of bodily integrity and sexual assault by police, the Municipal Defendants encouraged, tolerated, ratified, and acquiesced to a dangerous environment of sexual assaults against

underage males by BPD officers by failing to conduct sufficient training or supervision; failing to adequately punish acts of sexual assault; and failing to properly or neutrally investigate citizen complaints of sexual assault of minors.

56. Officer Dodd and at least one other BPD officer engaged in a continuing, widespread and persistent pattern of conduct in violation of citizens' constitutional rights to bodily integrity and freedom from sexual assault.

57. At all times relevant to this Complaint, it was the longstanding widespread deliberately indifferent custom, habit, practice and/or policy of the Municipal Defendants to permit BPD officers to sexually assault minors, to fail to supervise BPD officers who were sexually assaulting minors, and to fail to investigate reports of sexual assaults by BPD officers knowing that these members of law enforcement posed a significant risk to the public.

58. These deliberately indifferent customs and/or tacit authorizations of the Municipal Defendants were the causes of the injury to Girard's Constitutional rights to liberty of bodily integrity and right to be free from sexual assaults by BPD officers.

59. Girard did not know and had no reason to know that the deliberately indifferent actions and/or omissions of the Municipal Defendants were the cause of his injuries and the violations of his Constitutional rights.

60. Girard was injured by the Municipal Defendants' deliberate indifference to the violations of his Constitutional rights.

61. As a result of the Municipal Defendants' actions and inactions, Girard suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

## COUNT IV
## NEGLIGENT SUPERVISION
### (Municipal Defendants)

62. Girard repeats and realleges Paragraphs 1 through 61 as if set forth fully herein.

63. At all times relevant to this Complaint, a special relationship existed between the Municipal Defendants, who were trusted and empowered to protect minor citizens of Biddeford, including Girard, who are more vulnerable than adults.

64. There was a disparity of power and influence between the Municipal Defendants and Girard.

65. As a result of these circumstances, there was a reasonable basis for Girard to place trust and confidence in the Municipal Defendants.

66. Girard in fact placed trust and confidence in the Municipal Defendants.

67. The Municipal Defendants knew or should have known that Officer Dodd posed a substantial risk of harm to Girard.

68. Under these circumstances the Municipal Defendants owed a duty to protect Girard.

69. The Municipal Defendants failed to exercise their duty of care to protect Girard.

70. The Municipal Defendants' failure to exercise their duty of care caused injuries to Girard.

71. As a result of the Municipal Defendants' breach of duty, Girard suffered damages, including but not limited to severe psychological damages, post-traumatic stress disorder, pain, suffering, humiliation, embarrassment, lost wages and permanent impairment.

WHEREFORE, Plaintiff requests that this Court order the following:

1. Compensatory damages against each Defendant jointly and severally on all counts.

2. Punitive damages against Defendants Stephen Dodd and Roger Beaupre jointly and severally.

3. Punitive damages against the Municipal Defendants on Count IV.

4. Reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1983.

5. Any other relief that this this Court deems just and proper.

## JURY DEMAND

Girard demands a trial by jury on all counts of his Complaint.

Date: 1/28/16

_____
DANIEL G. LILLEY, ESQ., Bar No. 1870

Date: 1/28/16

_____
AMBER L. TUCKER, ESQ., Bar No. 4472

*Attorneys for Plaintiff*
Daniel G. Lilley, P.A.
39 Portland Pier
P.O. Box 4803
Portland, Maine 04112-4803
(207-774-6206