## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BERTRAND GIRARD, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:16-cv-00165-LEW |
| v. | ) | |
| | ) | |
| STEPHEN DODD, ROGER | ) | |
| BEAUPRE and CITY OF | ) | |
| BIDDEFORD, | ) | |
| | ) | |
| Defendants. | ) | |

### CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT

Defendants Roger Beaupre and City of Biddeford ("City Defendants") move for summary judgment on Plaintiff Bertrand Girard's 42 U.S.C. § 1983 claims against them on four grounds. First, Girard's claims are time-barred. Second, the claims fail because the underlying conduct Girard alleges (sexual abuse by Officer Stephen Dodd) was not engaged in under color of state law. Third, there is no evidence that the City Defendants did anything to violate Girard's constitutional rights. Fourth, and at a minimum, the claim against Chief Beaupre, who has been sued in his individual capacity, should be dismissed under the doctrine of qualify immunity.

### I.      Girard's claims are barred by the statute of limitations.

The First Circuit has made clear that "the Maine six-year statute of limitations, 14 M.R.S.A. § 752, is the appropriate one to be used for section 1983 cases in the state of Maine." *Small v. Inhabitants of City of Belfast*, 796 F.2d 544, 546 (1st Cir. 1986); *see also Douglas v. York County*, 433 F.3d 143, 144 (1st Cir. 2005) ("Since there is no federal statute of limitations for federal civil rights actions, courts look to the state limitations period for personal injury actions. The Maine statute of limitations for personal injury actions is six years.") (citation

omitted); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (reading 42 U.S.C. § 1983 "as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims.").

Girard, who turned 18 on September 19, 1982, alleges that he was sexually abused by Dodd starting in the late 1970s.[1]  City Defendant's Statement of Material Facts ("SMF") ¶ 2; Am. Compl. ¶ 10.  Under the six-year statute of limitations for section 1983 actions in Maine, Girard had until 1988—six years after he turned 18—to file his complaint.  His 2016 complaint is therefore time-barred unless he can find a way around the six-year statute of limitations.  As explained below, he cannot do so.

### A.      The statute of limitations was not tolled under 14 M.R.S. § 853.

Girard claims to have suffered from a "mental illness" of unspecified nature and duration that prevented him from suing the City Defendants before he did.  *See* Am. Compl. ¶¶ 45-49. Section 853 provides for the tolling of statutes of limitations if a person is "mentally ill," until such time as "the disability is removed."

The Law Court has held that "[m]ental illness under the tolling statute refers to an *overall inability* to function in society that prevents plaintiffs from protecting their legal rights."  *McAfee v. Cole*, 637 A.2d 463, 466 (Me. 1994).  As the First Circuit has observed, "Maine courts have consistently taken a narrow approach to this tolling provision and have consistently focused on the overall ability to function in society."  *Douglas v. York County*, 433 F.3d 143, 153 (1st Cir.

---

[1] While not material to this motion, the age of consent in Maine is 16, not 18.  *See* 17-A M.R.S. §254(1) ("A person is guilty of sexual abuse of a minor if: A. The person engages in a sexual act with another person, not the actor's spouse, who is either 14 or 15 years of age and the actor is at least 5 years older than the other person.").  Because there is no evidence in the record of nonconsensual sexual contact between Girard and Dodd after Girard turned 16, the latest date on which Dodd could have unlawfully sexually abused Girard would be the day before Girard turned 16 on September 19, 1980.  Since the statute of limitations would have been tolled until Girard turned 18 two years later (*see* 14 M.R.S. § 853), the point is not material for purposes of this motion, but the City Defendants reserve the right to argue and present evidence on this point later in this case and in other related cases.

2005).  To succeed in using § 853 to get around his statute of limitations problem, Girard would have to prove that he had a mental illness for almost three decades.

In *Douglas* the First Circuit rejected an argument that a plaintiff was mentally ill within the meaning of section 853, and affirmed this Court's entry of summary judgment for the defendant on statute of limitations grounds, because the evidence was that the plaintiff "did function in general and did assert other legal rights."  433 F.3d at 153.  In support of that conclusion, the First Circuit declared that while a psychiatrist had opined that Douglas "lacked the strength" to sue over her memories of being raped, that was

> simply not enough against the entire record of background evidence showing she did function in society to protect herself and her legal rights. Douglas was reasonably self-sufficient throughout the period in question, maintaining employment and paying rent, and hiring counsel twice to protect her rights.

*Douglas*, 433 F.3d at 153–54.

There is ample evidence that Girard, like the plaintiff in *Douglas*, "did function in society" over the years he claims to have been unable to do so.  Girard has been married for 16 years.  SMF ¶ 7.  Over the years Girard has paid child support for four children (*id*. ¶ 25).  He also has legal custody of four children, after persuading a judge to grant him custody.  *Id*. ¶¶ 27-29.  He has retained counsel to assist him with child support issues (*id*. ¶ 26) and to file three personal injury lawsuits.  *Id*. ¶¶ 16-24.  He has filed a social security disability claim and applied for unemployment insurance.  *Id*. ¶¶ 30-35.  On two occasions he hired an attorney in connection with criminal charges.  *Id*. ¶¶ 42, 44.  He has also consulted and retained counsel in connection with this case.  *Id*. ¶¶ 48-50; *see infra* at 7.

Earlier in the relevant time period Girard rented numerous apartments; he has since lived for over a decade in a house he owns with his wife and is responsible for mortgages.  *Id*. ¶¶ 52-57.  He has had business and personal checking accounts for over 15 years.  *Id*. ¶¶ 58-59.

13945530.1

Girard has held numerous jobs since he turned 18.  His first job after high school was with WestPoint Stevens, where he loaded trailer trucks with boxes for about 6-9 months. (SMF ¶ 69.)  Next Girard worked as a laborer for about a year for Volk Packaging.  *Id*. ¶ 71.  He then worked on and off for about ten years for Thyng Paving doing lard labor, including swinging a pick, digging grass, busting up tile, and riding a hot top roller.  *Id*. ¶¶ 73-74.  He also worked in Connecticut for a mason.  *Id*. ¶ 76.

For the past 20 years Girard has been the sole owner and proprietor of a business (Girard Yard Services) that provides paving, seal coating, and tree removal services.  SMF ¶¶ 77-78.  He runs the company, including sales, estimates, billing, collections, and performs all work on jobs except for arborist work.  *Id*. ¶ 79.  He has hired and paid employees and subcontractors (*id*. ¶¶ 80-81) and has purchased workers compensation and liability insurance for the company and paid the premiums.  *Id*. ¶¶ 82-84.  For the past 15 years he has engaged an accounting firm to prepare his personal and business tax returns.  *Id*. ¶ 86.  He has purchased, owned, registered, had inspected, and maintained numerous cars, trucks, motorcycles, snowmobiles, recreational vehicles, boats, and trailers, and is licensed to operate cars and motorcycles.  *Id*. ¶¶ 87-129.

As with the plaintiff in *Douglas*, there is an extensive "record of background evidence" in the summary judgment record demonstrating that Girard "did function in society to protect [him]self and [his] legal rights."  433 F.3d at 153.  Like the plaintiff in *Douglas*, Girard "was reasonably self-sufficient throughout the period in question, maintaining employment and paying rent, and hiring counsel . . . to protect [his] rights."  *Id*. at 154.

The facts here stand in contrast to the situation in *Bowden v. Grindle*, 675 A.2d 968 (Me. 1996), where the plaintiff was found to have a mental illness sufficient to toll the statute of limitations under section 853.  In *Bowden* there was both "expert and lay testimony" that the

4

plaintiff "had suffered from psychiatric problems for which she had been hospitalized and medicated for decades," that her "thinking was impaired, that she could not remember, and that she experienced suicidal thoughts." *Id*. at 971 ("Bowden testified that she had little recollection of meeting with the attorney and she did not know what she was signing when she executed the deed."); *see also id*. ("In the opinions of the experts, Bowden in 1984 was not able to make an informed rational judgment about conveying her property because she was experiencing the effects of her depression at that time, her cognitive thinking was impaired, and her problem of dependency rendered her helpless."). "[T]he medical testimony confirmed that there were times when Bowden had difficulty cooking her own meals, leaving the house, and driving." *Id*. at 972. All of that was sufficient for the Law Court to conclude that the trial court's determination "that Bowden was suffering from a mental disability sufficient to toll the statute of limitations [was] not clearly erroneous." *Id*. There is nothing remotely comparable in the record here. Girard's argument for tolling on the ground of mental illness under section 853 must therefore fail.

### B.    The statute of limitations was not tolled by the discovery rule.

According to the Complaint, "Girard first discovered the involvement of Chief Beaupre and the City of Biddeford sometime in 2014-15 when the sexual assault of several other individuals at the hands of Biddeford police officers was being investigated and publicized in the media." (Am. Compl. ¶ 50.) "The question of when a cause of action accrued is a matter of federal law." *Street v. Vose*, 936 F.2d 38, 40 (1st Cir. 1991).

"The accrual period for a Section 1983 action begins when the plaintiff knows *or has reason to know* of the injury which is the basis of the action." *Id*. (quotation marks omitted) (emphasis added). A plaintiff who knows he has been injured cannot "sit back, without further investigation, and permit the statutory period to lapse," but must instead "exercise . . . reasonable

5

diligence" to "discover[] the full extent of his injury" within the statutory period. *Marrapese v. State of R.I.*, 749 F.2d 934, 944 (1st Cir. 1984); *see also id.* at 938 (a plaintiff who knows he has a civil rights claim has "a duty to exercise reasonable diligence to investigate and perfect his rights within the three years the statute allowed him following the wrongful conduct."). "The discovery rule incorporates an objective standard," so that "[t]o delay commencement of the running of the statute of limitations, 'the factual basis for the cause of action must have been *inherently unknowable* [that is, *not capable of detection through the exercise of reasonable diligence*] at the time of injury.'" *Sanchez v. United States*, 740 F.3d 47, 52 (1st Cir. 2014) (brackets in original) (emphasis added). Simply put, "a § 1983 claim accrues when a plaintiff knows or has reason to know of his injury." *Poy v. Boutselis*, 352 F.3d 479, 483 (1st Cir. 2003). Accrual is delayed by the discovery rule only if "the factual basis for the cause of action" was, not just unknown to the plaintiff, but 'inherently unknowable'" (*Attallah v. United States*, 955 F.2d 776, 780 (1st Cir. 1992))—or "incapable of detection by the wronged party through the exercise of reasonable diligence." *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 376 (1st Cir. 1991) (quotation marks omitted).

Girard has known that he was injured by Dodd since the abuse alleged in the complaint happened. (SMF ¶ 151.) And he has had reason to know that the City and Beaupre might have played a role in his abuse since it happened—or at a minimum, since the early 2000s, when he consulted a lawyer about the situation. When Dodd turned 18 in 1982,[2] he "possessed knowledge of the facts underlying his cause of action sufficient to put him on inquiry notice" that he had a claim against Dodd, and that he might have a claim against Dodd's employer. *Marrapese*, 749 F.2d at 937. If the Court is not convinced that Girard was on inquiry notice of his potential claims against the City and Beaupre in 1982, it should find that he was on notice as

---

[2] *See* note 1 *supra*.

of the late 1980s or early 1990s, when he twice tried unsuccessfully to call and speak with Chief Beaupre about the matter and did not leave a message.  (SMF ¶ 14.)  And if that is not enough, Girard was unquestionably on notice of his claims against the City Defendants as of the early 2000s, when, after being interviewed about Dodd by an investigator from the Maine Attorney General's Office, Girard went to see a lawyer "because of what Steve Dodd did to [him]."  *Id.* ¶¶ 47-48.  After meeting with his lawyer, Girard did not file a lawsuit because of "statute of limitations."  *Id.* ¶ 49.

The factual basis for Girard's claims against Beaupre and the City was not "inherently unknowable"—instead, it was readily "capable of detection through the exercise of reasonable diligence."  *Sanchez*, 740 F.3d at 52.  Indeed, as of the early 2000s Girard was sufficiently aware of his potential claims that he consulted a lawyer about them.  Yet after consulting a lawyer Girard did nothing further to investigate or pursue his claims.  Girard points to no new information he acquired in the six years before he filed this lawsuit that caused him to realize that he had a claim against the City and Beaupre, but that had been inherently unknowable and incapable of detection—either by Girard himself, or by the lawyer he consulted in the early 2000s—before then.  He therefore cannot now invoke the discovery rule to justify his decades-long delay in filing this lawsuit.  *See id.*

The First Circuit has declared that "[o]nce a plaintiff knows of the injury and its probable cause, he/she bears the responsibility of inquiring among the medical and legal communities about whether he/she was wronged and should take legal action."  *Sanchez*, 740 F.3d at 52 (quotation marks omitted).  Girard knew of his alleged injury when he turned 18 in 1982, and of its probable cause.  At that point he bore the responsibility of inquiring among "legal communities about whether he . . . was wronged and should take legal action."  *Id.*  In the early

7

2000s he *did* consult a lawyer about his potential claims, but still he did not sue.  (SMF ¶¶ 47-49.)  Girard's failure to investigate a known injury with reasonable diligence and to file a timely claim when we could have done so defeats his argument for tolling under the discovery rule.  *See A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 141-42 (2nd Cir. 2011) ("An accrual date that turns on when a plaintiff (or his lawyers) finally decides to take action, rather than when the plaintiff was sufficiently alerted to the appropriateness of seeking legal advice, would render the limitations period meaningless.").

In *Duncan v. Oregon*, 2007 WL 789433 (D. Ore. Mar. 14, 2007), plaintiffs who had alleged sexual abuse by an employee of the Oregon Youth Authority sued the employee and certain "State Defendants" for failing to prevent the abuse.  Like Girard, the *Duncan* plaintiffs sought to invoke the federal discovery rule with respect to the State Defendants, arguing that their "policy of failing to investigate and discipline [the abuser] is separate from the sexual abuse . . . ."  *Id.* at *4.  Like Girard, the *Duncan* plaintiffs argued that their "awareness of the sexual abuse does not impute knowledge of the claims against State Defendants" for failing to discover or prevent the abuse.  *Id.* ("Plaintiffs contend that State Defendants had a policy of failing to investigate and supervise Boyles [the abuser] and failing to keep records of complaints against him, thus hiding the information from plaintiffs. This policy did not come to light due to State Defendants' efforts to hide it . . . .").

The *Duncan* court rejected the argument that the plaintiffs' cause of action against the State Defendants had not accrued under the federal discovery rule until they found out about the specific ways the State Defendants had failed to discover or prevent their injuries:

> I agree with plaintiffs that State Defendants' policy of failing to investigate and discipline Boyles involves a separate legal interest than the sexual abuse committed by Boyles. The damage to plaintiffs, however, occurred when they were sexually abused. They were not further damaged if State Defendants covered

8

up their knowledge of Boyles' misconduct with others or if State Defendants failed to act to protect plaintiffs. The sexual abuse is the injury which is the basis for both the cause of action against Boyles and the cause of action against State Defendants. All plaintiffs remember the abuse, none had repressed memories. They knew they were abused and they knew Boyles was a state employee. I sympathize with plaintiffs' arguments that they had no one to turn to for help because Boyles ruled their lives. Plaintiffs, however, could have spoken to teachers, counselors, foster parents, judicial officers, or medical personnel.

*Id.* *6. Likewise in *Plumeau v. Sch. Dist. No. 40 County of Yamhill*, the Ninth Circuit held:

A plaintiff has a duty to use due diligence in an effort to discover the party responsible for her injury. The Plumeaus knew the abuse took place during school hours and on school property and that the abuser was a school district employee. We agree with the district court that these facts were sufficient to apprise the Plumeaus of their potential claims against the district for failure to supervise [school district employee/abuser] Moore.

130 F.3d 432, 437 (9th Cir. 1997) (citation omitted).  This Court should reject Girard's attempt to invoke the discovery rule where he knew about his alleged injury and could—with the exercise of due diligence—have discovered, decades before he did, the basis for his claim that the City Defendants contributed to his injuries.

The Court need not decide whether Girard should be held to have had reason to know of his potential claim against the City and Beaupre in 1982, in the late 1980s or early 1990s, or in the early 2000s, when he consulted a lawyer and decided not to sue.  Whichever date the Court selects falls more than six years before Girard filed this lawsuit.  His section 1983 claim against the City and Beaupre is therefore time-barred.

### C.     Girard's claims against the City and Beaupre are time-barred because his underlying claim against Dodd is time-barred.

Girard's section 1983 claim against the City and Beaupre is time-barred for yet another reason: his underlying section 1983 claim against Dodd is time-barred, and the First Circuit has held that where a section 1983 claim against a police officer is barred by the statute of limitations, a plaintiff's supervisory and municipal liability claims against the police chief and

9

the municipality based on the conduct of that police officer "also must fail." *Nieves v. McSweeney*, 241 F.3d 46, 50 (1st Cir. 2001).

Girard's section 1983 claim against Dodd is barred by the statute of limitations for the same basic reason his claim against the City Defendants is barred: the alleged abused happened in the late 1970s and the beginning of the 1980s[3] (Am. Compl. ¶ 10); Girard knew he had been abused (SMF ¶ 151); and he did not suffer from a mental illness within the meaning of section 853. Here as in *Nieves*, because the section 1983 claim against the police officer accused of violating the constitutional rights of the plaintiff is barred by the statute of limitations, so are the section 1983 claims against the City and Chief Beaupre based on the same underlying conduct. 241 F.3d at 50; *see also Evans v. Avery*, 100 F.3d 1033, 1039 (1st Cir. 1996) (section 1983 claim against the City of Boston could not succeed because the plaintiff's claim against the police officer defendants accused of committing the underlying constitutional violations was not viable); *Spencer v. Roche*, 659 F.3d 142, 150 (1st Cir. 2011) ("[T]he absence of an anchoring constitutional violation dooms the claim that the City failed properly to train the officers.").

## II.    Dodd was not acting under color of state law.

"There are two essential elements of an action under section 1983: (i) that the conduct complained of has been committed under color of state law, and (ii) that this conduct worked a denial of rights secured by the Constitution or laws of the United States." *Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995) (quotation marks omitted). The "under color of state law" requirement goes to the heart of the statute's purpose, as "[t]he central aim of the Civil Rights Act [section 1983] was to provide protection to those persons wronged by the [m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Owen v. City of Indep., Mo*., 445 U.S. 622, 650 (1980) (quotation

---

[3] *See* note 1 *supra*.

marks omitted); *see also Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("The purpose of § 1983 is to

deter state actors from using the badge of their authority to deprive individuals of their federally

guaranteed rights . . . ")  The under-color-of-law requirement is "a jurisdictional requisite for a

§ 1983 action . . . ."  *Polk County v. Dodson*, 454 U.S. 312, 315 (1981).  In short, for a plaintiff

to prevail on a section 1983 action the conduct complained of must be "fairly attributable to the

State[.]"  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) (quotation marks omitted).

The First Circuit has made clear that "section 1983 is not implicated unless a state actor's

conduct occurs in the course of performing an actual or apparent duty of his office, or unless the

conduct is such that the actor could not have behaved in that way but for the authority of his

office."  *Martinez*, 54 F.3d at 986.  For a defendant to have acted under color of state law

requires that they "exercised power possessed by virtue of state law and made possible only

because the wrongdoer is clothed with the authority of state law."  *Id*. (quotation marks omitted).

"Hence, a person acts under color of state law when he abuses the position given to him by the

State."  *Id*. (quotation marks omitted).  "The key determinant is whether the actor, at the time in

question, purposes to act in an official capacity or to exercise official responsibilities pursuant to

state law."  *Id*.  Of crucial importance here, "the acts of state officials 'in the ambit of their

personal pursuits' are not state action."  *Id*. (quoting *Screws v. United States*, 325 U.S. 91, 111

(1945)).  That being so, "a policeman's private conduct, outside the line of duty and unaided by

any indicia of actual or ostensible state authority, is not conduct occurring under color of state

law."  *Id*. at 986-87; *see also id*. at 987 ("Even though 'acting under color of law' includes

'acting under pretense of law' . . . , there can be no pretense if the challenged conduct is not

related in some meaningful way either to the officer's governmental status or to the performance

of his duties.").  Even "statements by individuals that they are entitled to a special privilege

because of their official status do not constitute action under color or pretense of state law if the asserted privilege lies clearly outside the scope of their official duties." *Parrilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 450 (1st Cir. 1997).

The question, then, is this: if Dodd committed the acts Girard claims he committed, was he "engaged in purely personal pursuits," or was he "acting under color of state law"? *Id.* at 987. The evidence in the summary judgment record supports only one conclusion: Dodd was engaged in purely personal pursuit, and was not acting in his official capacity.

Stephen Dodd is a gay man who worked at the Biddeford Police Department from 1978 to 2003. (SMF ¶¶ 130-132.) Dodd never engaged in any sexual activity while on duty and never disclosed his sexual orientation to any member of the department. *Id.* ¶¶ 133-136. Girard first met Dodd around 1979. (SMF ¶ 139.) Girard alleges that he began to look at Dodd like a big brother or father figure because he provided Girard with clothes, transportation, and occasionally alcohol. *Id.* ¶ 141. Not too long after they met, Girard alleges that he was having trouble at home and Dodd offered to have Girard come live with him. *Id.* ¶ 142. Girard alleges that he lived with Dodd on and off, on four or five different occasions spanning over 20 years. *Id.* ¶ 143. Girard kept returning to live with Dodd because he knew Dodd would help him survive. *Id.* ¶ 144. Before a Maine Attorney General Investigator came to Girard's house in the early 2000s, only Girard's brothers knew that Dodd had sexually abused him. *Id.* ¶ 145.

The alleged sexual abuse began after Girard moved into Dodd's apartment. (SMF ¶ 146.) Girard alleges the first incident of sexual abuse began with them drinking alcohol in Dodd's living room, and that he later awoke to discover Dodd performing oral sex on him as he lay naked on Dodd's waterbed. *Id.* ¶ 147. Neither this nor any other acts Girard claims Dodd committed (*see id.* ¶¶ 148-149) have any connection to Dodd's status as a police officer. Dodd

12

did not use Biddeford Police Department crime reports or data bases to access the names of minors for the purpose of targeting them for sexual activity. (SMF ¶ 137).  Nor did he use Police Department equipment to contact any person to engage in a sexual act.  (SMF ¶ 138).  There is no evidence that Dodd did anything that suggested a connection between his personal conduct with Girard and his status as a police officer.  Girard therefore cannot prove that Dodd acted under color of state law, and that the City Defendants are responsible for his actions.

It is not enough that Girard knew Dodd was a police officer, or even that Dodd may have been in uniform or used his police car in connection with the abuse.  In *Martinez v. Colon*, the First Circuit held that an on-duty police officer did not act under color of state law when, on duty and in uniform, he shot another officer with his police revolver.  54 F.3d 980, 987-88 (1st Cir. 1995).  The Court so held because at the time of the shooting the officer was not performing official duties, but instead was "on a singularly personal frolic: tormenting an acquaintance."  *Id.* at 987.  The court explained that, "[t]hough on duty and in uniform, [the officer's] status as a police officer simply did not enter into his benighted harassment of his fellow officer.  Hazing of this sort, though reprehensible, is not action under color or pretense of law."  *Id.*; *see also id.* at 988 ("[P]laintiff has not produced any evidence tending to show that his tormentor, when brandishing the firearm, was exercising or purporting to exercise police power. In the absence of any additional indicia of state action, we believe that the unauthorized use of a government-issue weapon is too attenuated a link to hold together a section 1983 claim.") (footnote omitted).  Likewise here, what Girard claims Dodd did was personal conduct engaged in by Dodd outside the scope of his official duties that cannot support a section 1983 claim.

In *Roe v. Humke*, 128 F.3d 1213, 1214 (8th Cir. 1997), the police officer defendant "met eleven-year-old Jane Doe in 1994 while sitting outside the school in his patrol car and in

13

uniform.  Humke was regularly at the school as part of his duties . . . .  He bought her candy and

sodas and gave her a pen set for Christmas.  While he was driving around town in his patrol car,

he would drive to Doe's house and talk to Doe from the car.  Humke hugged and kissed Doe

through the window of the patrol car . . . ."  *Id*. at 1214.  Despite all that, the court held that the

officer was not acting under color of state law when he subsequently "took Doe to his farm for

his own personal pursuits, not for any purpose legitimately or purportedly related to the exercise

of his responsibilities as a police officer," and sexually abused her, because "there was no nexus

between his position as a police officer and his abuse of Doe on the day in question."  *Id*. at

1216, 1218; *see also id*. at 1217 (rejecting argument that, "had Humke not been a police officer,

the actions of a relative stranger [to Doe] . . . would not have been tolerated," and rejecting

argument that "Humke's credibility was enhanced by virtue of his position as a police officer,"

because "the knowledge of Humke's status alone by Doe and her parents is not sufficient to

convert [his] actions . . . in the pursuit of his private interests into action taken under color of

state law.").   The same is true here: while Girard may have known that Dodd was a police

officer, Dodd's alleged acts against him constitute "personal pursuits" that were not undertaken

"for any purpose legitimately or purportedly related to the exercise of his responsibilities as a

police officer."

Numerous courts have found that police officers were not acting under color of state law

because there was an insufficient connection between their misconduct and their official status or

duties.  *See Halwani v. Galli*, 2000 WL 968219, at *3 (E.D. Pa. July 13, 2000) (on-duty,

uniformed police officer did not act under color of law because the incident at issue was "one of

a personal nature" and the officer "did not utilize state authority" or "threaten to arrest" the

plaintiff); *Parrilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 450-51 (1st Cir. 1997) (police

officer on medical leave was not acting under color of state law when he displayed his identification, told patrons he was there to keep the peace, and then shot and killed a patron during bar fight); *Almand v. DeKalb County*, 103 F.3d 1510, 1514 (11th Cir. 1997) (police officer was not acting under color of state law when he forcibly reentered plaintiff's apartment and raped her, despite the fact that he had "initially gained entry to [the] apartment on the pretense of discussing police business"); *Haines v. Fisher,* 82 F.3d 1503, 1508 (10th Cir. 1996) (on-duty police officers who staged a robbery of a convenience store as a practical joke did not act under color of law because they did not use state authority to execute their plan); *Johnson v. Hackett*, 284 F. Supp.933, 937 (E.D. Pa 1968) ("It is not alleged that the offer to fight was in any way related to the performance of police duties."). Here too, the nexus between Dodd's alleged sexual conduct toward Girard and his position as a police officer that would be required to support a section 1983 claim is nowhere to be found.

Because Dodd was not acting under color of state law, he did not violate Girard's constitutional rights. In the absence of an underlying constitutional violation, Girard's section 1983 claims against the City and Beaupre must also fail.   *See Ramirez-Lluveras v. Rivera-Merced*, 759 F.3d 10, 19 (1st Cir. 2014) ("There are a number of clear rules governing supervisory liability under § 1983. First, the subordinate's behavior must have caused a constitutional violation . . . .").

### III.   <u>There is no evidence that the City or Beaupre violated Girard's constitutional rights.</u>

Even if Girard could prove an underlying constitutional violation by Dodd, his section 1983 claims against the City Defendants would still fail, because there is no evidence that the First Circuit's stringent requirements for supervisory liability under section 1983 are met. The First Circuit has made clear that "the tort theory of respondeat superior does not allow imposition

15

of supervisory liability under § 1983." *Ramirez-Lluveras*, 759 F.3d at 19.  "Proof that the supervisors were negligent is also insufficient."  *Id*.  "Further, § 1983 liability cannot rest solely on a defendant's position of authority."  *Id*.

Instead, it is necessary to show "a strong causal connection between the supervisor's conduct and the constitutional violation."  *Id*.  "[A] supervisor may not be held liable for the constitutional violations committed by his or her subordinates, unless there is an *affirmative link* between the behavior of a subordinate and the action or inaction of his supervisor ... such that the supervisor's conduct *led inexorably to the constitutional violation*."  *Feliciano-Hernandez v. Pereira-Castillo*, 663 F.3d 527, 533 (1st Cir. 2011) (emphasis added) (quotation marks omitted) (omissions in original).  "In addition, the supervisor must have notice of the unconstitutional condition said to lead to the claim."  *Ramirez-Lluveras*, 759 F.3d at 20.  "A plaintiff may prove causation by showing a known history of widespread abuse sufficient to alert a supervisor to ongoing violations."  *Id*. at 20 (quotation marks omitted).  "However, proof of that sort must truly show widespread abuse; isolated instances of unconstitutional activity ordinarily are insufficient ... to show deliberate indifference."  *Id*. (omission in original) (quotation marks omitted).  The First Circuit has "formulated the deliberate indifference inquiry as a three-part test that requires plaintiffs to show: (1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists."  *Id*. (quotation marks omitted).

There is no evidence that, when the sexual abuse at issue in this case is alleged to have happened, either Beaupre or the City was on notice that Dodd was violating Girard's constitutional rights—let alone notice of "a known history of widespread abuse"—or that Beaupre or the City did anything that "led inexorably" to the violation of Girard's constitutional

16

13945530.1

rights, or did anything that had a "strong causal connection" to the violation of Girard's

constitutional rights.  Indeed, Beaupre only became the Chief of Police in 1981, the year before

Girard turned 18.  (SMF ¶¶ 2, 11.)  While the Complaint offers conclusory allegations that

Beaupre "was given information prior to Stephen Dodd's abuse such that he was aware of and/or

should have been aware that Stephen Dodd and at least one other Biddeford police officer had

been and were sexually abusing young boys" (Am. Compl. ¶ 1), and that Beaupre "ignored this

information and failed to prevent the abuse" (*id*.), there is no actual evidence in the summary

judgment record to support these conclusory claims.  Nor is there evidence to support the claim

that, at the time Girard was abused, Beaupre engaged in conduct "amounting to deliberate

indifference" (Am. Compl. ¶ 60) or took "actions and/or inactions" that "were affirmatively

linked to Officer Dodd's violation of Girard's Constitutional rights."  *Id*. ¶ 61.  There is simply

no evidence that during the years at issue anything happened "to put [Dodd's] supervisors on

notice that he presented a substantial, unusually serious, or grave risk" of abusing Girard.

*Ramirez-Lluveras*, 759 F.3d at 21.

Although the First Circuit has declined to "recast the contours of supervisory liability in

the aftermath of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)" (*Ramirez-Lluveras*, 759 F.3d at 19), in

the event that the Court does not agree that Girard has failed to provide evidentiary support for

his supervisory liability claim under the standard articulated in *Ramirez-Lluveras,* it should grant

summary judgment for the City Defendants under *Iqbal*, where the Supreme Court held that

"[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, *through the official's own individual actions*, has violated the

Constitution."  556 U.S. at 676 (emphasis added); *see also id.* at 677 ("[E]ach Government

official, his or her title notwithstanding, is only liable for his or her own misconduct.").  As just

13945530.1

explained, there is no evidence that Beaupre, through his own individual actions, violated Girard's constitutional rights.  *See Ruiz-Rosa v. Rullan*, 485 F.3d 150, 157 (1st Cir. 2007) ("While proof of deliberate indifference . . . does not require evidence that the officials were aware of the risk of a specific harm, the plaintiff must show that the officials had knowledge of facts from which the official[s] can draw the inference that a substantial risk of serious harm exists.") (quotation marks omitted);

## IV.    **Beaupre is entitled to qualified immunity.**

"The general rule of qualified immunity is intended to provide government officials with the ability reasonably [to] anticipate when their conduct may give rise to liability for damages." *Anderson v. Creighton*, 483 U.S. 635, 646 (1987) (quotation marks omitted).  "Officials are entitled to qualified immunity unless (1) the facts that a plaintiff has alleged or shown make out a violation of a constitutional right and (2) the right at issue was clearly established at the time of [their] alleged misconduct."  *Walden v. City of Providence, R.I.*, 596 F.3d 38, 52 (1st Cir. 2010) (quotation marks omitted).  The second prong has "two aspects. The first is whether, based on the clarity of the law at the time of the alleged civil rights violation, [t]he contours of the right . . . [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (alterations in original).  "The second aspect is whether, based on the facts of the particular case, a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* (quotation marks omitted).  "Summary judgment should be granted if the defendant official can establish as a matter of law that a reasonable official in her position would have believed that her conduct did not violate clearly established law." *Bowen v. City of Manchester*, 966 F.2d 13, 16 (1st Cir. 1992).  As summarized by the First Circuit: "Qualified immunity generally protects all but the plainly incompetent or those who knowingly violate the law." *Walden*, 596 F.3d at 52.

13945530.1

While "the summary judgment standard requires absolute deference to the nonmovant's factual assertions (as long as those assertions are put forward on personal knowledge or otherwise documented by materials of evidentiary quality), . . . qualified immunity, when raised on summary judgment, demands deference to the reasonable, if mistaken, actions of the movant." *Morelli v. Webster*, 552 F.3d 12, 18–19 (1st Cir. 2009). "In order to ease this inherent tension, we think it wise for courts to cabin these standards and keep them logically distinct, first identifying the version of events that best comports with the summary judgment standard and then asking whether, given that set of facts, a reasonable officer should have known that his actions were unlawful." *Id*. at 19. As explained in the previous section, there is no evidence in the record that Beaupre did anything unlawful. If the Court does not agree with that conclusion, it should rule, at a minimum, that there is no evidence that Beaupre did anything that he *knew or should have known* was unlawful.

While Dodd's underlying sexual abuse of Girard may have violated clearly established constitutional rights in a way that a reasonable person would have understood, there is no evidence of any conduct by Beaupre that did so. There is no evidence that, at any relevant time, Beaupre did anything that a reasonable official in his position would have understood to violate clearly established law, or that suggests that Beaupre was plainly incompetent or knowingly violated the law. Even setting aside the exacting requirements for the imposition of supervisory liability under section 1983—including the requirement that Beaupre have done something that *led inexorably* or had a *strong causal connection* to Dodd's underlying violation of Girard's constitutional rights (*see supra*)—there is not even any evidence in the record that Beaupre knew anything at all about Dodd's abuse of Girard when it happened. That being so, there is no evidence to support a finding that Beaupre "would have understood that his conduct violated

19

[Girard's] constitutional rights." *Walden*, 596 F.3d at 52.  Instead, the evidence is that when, years later, Beaupre first learned about Dodd sexual misconduct, he initiated an investigation and helped put an end to Dodd's law enforcement career.

Chief Beaupre first received information about alleged sexual misconduct by Dodd in 1989.  (SMF ¶ 163.)  Beaupre directed that the information be given to the district attorney's officer and the Maine Department of Health and Human Services, which then notified the Maine State Police.  *Id.* ¶¶ 164-167.  By the time the ensuing investigation ended the allegations against Dodd had been recanted.  *Id.* ¶ 168.   In 2002 Chief Beaupre again received information about alleged sexual misconduct by Dodd.  *Id.* ¶ 169.  Beaupre had the matter referred to the Office of the Maine Attorney General, which conducted an investigation.  *Id.* ¶¶ 170, 174.  Beaupre welcomed and cooperated with the investigation.  *Id.* ¶¶ 178-180.  When the investigation concluded with a decision not to prosecute Dodd, Chief Beaupre worked successfully to end Dodd's law enforcement career.  *Id.* ¶¶ 182-196.

Because there is no evidence that Beaupre did anything that he could reasonably have understood to be violating Girard's constitutional rights, or that he knew or should have known was unlawful, he is entitled to qualified immunity.

## V.   Conclusion

The Court should enter summary judgment in favor of Defendants Roger Beaupre and City of Biddeford on Girard's 42 U.S.C. § 1983 claims because they are barred by the statute of limitations; because the underlying conduct Girard alleges was not engaged in under color of state law; and because there is no evidence that the City Defendants did anything to violate Girard's constitutional rights.  At a minimum, the Court should enter summary judgment in favor of Beaupre under the doctrine of qualified immunity.

13945530.1

DATED at Portland, Maine this 1st day of April 2019

/s/ Timothy J. Bryant
Timothy J. Bryant, Esq. (Bar No. 7736)
Attorney for Defendant, Roger Beaupre
Preti, Flaherty, Beliveau & Pachios, LLC
One City Center
P. O. Box 9546
Portland, ME  04112-9546
tbryant@preti.com
(207) 791-3000

/s/ Keith R. Jacques
Keith R. Jacques, Esq. (Bar #2962)
Attorney for Defendant, City of Biddeford
Woodman Edmands Danylik Austin Smith
& Jacques, P.A.
234 Main Street
P.O. Box 468
Biddeford, ME 04005
krj@woodedlaw.com
(207)  284-4581

13945530.1